MILLIE M. DICKERSON

*v.*

THE NORTHWESTERN MUTUAL LIFE INSURANCE CO.

*Opinion filed December 16, 1902.*

1. INSURANCE—*a provision for forfeiture in case of suicide is valid.* A provision in a life insurance policy that if the insured, whether sane or insane, die by his own hand the policy shall be void, is valid, and its breach renders the policy void unless the insured was in such a state of mind as to be unconscious of the physical nature of the act of self-destruction; and upon this point the burden of proof is upon the beneficiary.

2. SAME—*when unearned premium need not be refunded.* If a life insurance policy provides that it shall be void if the insured commits suicide within two years, and that if the policy ceases or becomes void within three years all premiums shall be forfeited to the company, the company is not bound to return the unearned premium to the beneficiary as a condition to its right to declare the policy void, where the insured committed suicide within such two years, being two months before the next premium was due.

*Dickerson* v. *Northwestern Mut. Life Ins. Co.* 102 Ill. App. 280, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action in assumpsit, commenced on May 25, 1899, by the appellant, Millie M. Dickerson, against the appellee, the Northwestern Mutual Life Insurance Company, upon a policy of insurance, taken out on December 18, 1896, by Samuel H. Dickerson of Cleveland, Ohio, husband of appellee, for the sum of $2000.00, payable to his wife, the appellant. Upon the face of the policy the appellee promises to pay the money in consideration of the statements made in the application for the policy, which is referred to and made a part of the contract, and in further consideration of the payment at the company's office in Milwaukee, Wisconsin, of $33.24, and of the quarterly payment of a like sum to be made at said office on or before the 18th days of December, March, June and

September every year during the continuance of the policy. Appellee filed a plea of the general issue, and certain special pleas, which set out that the insured died by his own hand, and that, therefore, under one of the conditions of the policy, it became void. Replications were filed to the special pleas, alleging insanity, and to these replications the appellee demurred, and the court sustained the demurrers.

Appellant subsequently filed a special replication to the six special pleas, filed by appellee, setting up that all the premiums, paid upon the policy, had been paid by her to appellee's agent in Chicago, Illinois; that, at the time of the death of Samuel H. Dickerson, the assured, on October 4, 1898, she had paid out the sum of $265.92 in premiums on said policy, being the full premium up to December 18, 1898, or for the first two years of the term of said policy; that, if appellee had the right to declare the policy null and void, it became its duty, upon making such election, to forthwith return, or tender to the appellant, the portion of the unearned premium received by it from her; that the appellee refuses to make any return or tender of such unearned premium, but claims the right to retain the same, and declare the policy null and void on the ground set out in said six pleas; and appellant avers that, by reason of the failure of appellee to return or tender the said unearned premium, the policy has remained in full force and effect, and has not become null and void, and that she is not barred from maintaining her action. Appellee filed a general demurrer to this replication, which was sustained by the court, and the appellant stood by her replication. By agreement the cause was submitted for trial before the court without a jury. The trial court found the issues for the appellee, defendant below, and, after overruling a motion for new trial, entered judgment on the finding against the appellant for costs, to which exception was taken by the appellant. An appeal was taken from the

judgment so entered to the Appellate Court, where the judgment of the trial court has been affirmed. The present appeal is prosecuted from such judgment of affirmance.

The evidence showed that all of the premiums, which accrued upon the policy prior to the death of the insured, were paid to the total amount of $265.92, being the full premium for the first two years of the life of the policy; that the same were paid prior to the death of the insured in quarterly payments, the last payment being on the 18th day of September for the quarter beginning on that day and ending on December 18, 1898; that all the payments were made by the beneficiary in the policy, Millie M. Dickerson; that on October 19, 1898, proof of death was furnished appellee; and that between the 19th and 29th days of October, appellee refused to pay the claim. The proof showed that the insured died by his own hand, and it was stipulated that there was no evidence in the case, tending to show that he was insane at the time of his death. It was also stipulated that no portion of the premium, so paid by the beneficiary on said policy, had been returned to her by appellee, but that appellee still holds the whole amount of the premium so paid, and has made no tender of any portion thereof to appellant.

ALEXANDER CLARK, for appellant:

Policies of insurance are strictly construed against the insurer. *Insurance Co.* v. *Scammon,* 100 Ill. 644; *Healey* v. *Accident Ass.* 133 id. 556; *Insurance Co.* v. *Dunlap,* 160 id. 642; *Insurance Co.* v. *Spiers,* 87 Ky. 285.

Suicide renders the policy voidable at the election of the insurer, and not absolutely void. *Insurance Co.* v. *Cary,* 83 Ill. 453; *Insurance Co.* v. *Spiers,* 87 Ky. 285.

To take advantage of this condition the beneficiary should have been put *in statu quo* and the unearned premium paid by her returned. *Insurance Co.* v. *Botto,* 47 Ill. 516; *Insurance Co.* v. *McGuire,* 51 id. 342; *Insurance Co.* v. *Cary,* 83 id. 453; *Naugle* v. *Yerkes,* 183 id. 358.

Having elected to retain this premium, the condition of avoidance was irrevocably waived. *Insurance Co.* v. *Cary,* 83 Ill. 453; *Naugle* v. *Yerkes,* 183 id. 358; *Baker* v. *Insurance Co.* 77 Fed. Rep. 550.

The provision in the policy that the premium should be forfeited if the same became void did not apply to unearned premium. The law will not construe a provision as a penalty if it can be avoided. *Goodyear Machinery Co.* v. *Selz,* 157 Ill. 186; *Scofield* v. *Tompkins,* 95 id. 190; *Poppers* v. *Meagher,* 148 id. 190.

HOYNE, O'CONNOR & HOYNE, for appellee:

There was no obligation on appellee to return any part of the premium, and the failure to return or tender a proportion of the premium for the unexpired term was not a waiver of the right of appellee to consider the policy void. *Insurance Co.* v. *Stevenson,* 78 Ky. 150; *Colby* v. *Insurance Co.* 66 Iowa, 577; *Davison* v. *Insurance Co.* 189 Pa. St. 132; *Insurance Co.* v. *Smith,* 92 Fed. Rep. 503; *Insurance Co.* v. *Insurance Co.* 54 Neb. 740; *Insurance Co.* v. *Kelly,* 114 Fed. Rep. 268.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The policy of insurance, here sued upon, contains the following provision: "This policy * * * is issued and accepted by the parties in interest subject to the conditions and provisions stated on the second page of this policy, which are hereby made part of this contract." No. 2 of the conditions referred to provides that, "if, within two years from the date hereof, the said insured shall * * * undertake an aerial voyage, or shall die in consequence of a duel, or shall, whether sane or insane, die by his own hand, then, and in every such case, this policy shall be null and void."

The testimony shows that on October 4, 1898, at nine o'clock in the morning, at 238 Lake street in the city of

Cleveland, Ohio, which was the home of one Mrs. Winship, while she was receiving a call from Julius Strasser and his wife, the insured, Samuel H. Dickerson, shot and killed Mrs. Winship, and then killed himself; that he fired several shots at Mrs. Winship before he killed himself; that, when the policemen came to the house, they found Mrs. Winship lying on the floor, and Dickerson lying across the bed, both of them dead.

It is not denied that the insured, Samuel H. Dickerson, died by his own hand within two years from the date of the policy, and there is no proof tending to show that he was insane when he took his own life. It was provided in the policy that, if he should, "whether sane or insane, die by his own hand, then * * * this policy shall be null and void." In view of the terms of the policy, and the facts as already stated, appellee was discharged from liability upon the policy, and had a complete defense to the action brought by appellant. Suicide of itself raises no presumption of insanity. The law presumes that all men are sane. The burden of proof was upon the appellant to prove that the insured, if he took his own life, was of unsound mind at the time. The word "suicide," and the words "to die by his own hand," or "by his own act," or "to take his own life," mean the same thing, and convey the idea of voluntary, intentional self-destruction. Such a provision in a life insurance policy, as that in the policy here sued upon, to the effect that, if the insured "whether sane or insane, die by his own hand," the policy shall be null and void, has been held to be valid; and its breach renders the policy void, unless the assured was in such a state of mind as to be unconscious of the physical nature of the act of self-destruction. (19 Am. & Eng. Ency. of Law,—2d ed.—pp. 76, 77; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 Ill. 408; *Supreme Lodge O. M. P.* v. *Gelbke,* 198 Ill. 365; *Life Ins. Co.* v. *Terry,* 15 Wall. 580; *Bigelow* v. *Berkshire Life Ins. Co.* 93 U. S. 284; *Home Benefit Ass.* v. *Sargent,* 142 id. 691). There is no evidence whatever

here that the deceased, Samuel H. Dickerson, did not have sufficient mental understanding to realize the moral turpitude of his act of self-destruction, nor is there any evidence that he was in such a state of mind as to be unconscious of the physical consequences of the act which caused his death. On the contrary, in the absence of any proof as to his insanity, all the presumptions are in favor of his sanity, and of his consciousness of the character of the act which he committed.

*Second*—The policy, upon which the present suit is brought, also contains the following provision: "If this policy shall cease, or become void, within three years from this date, all payments thereon shall be forfeited to the company, but after payment of premiums for three years it shall be non-forfeitable under and subject to the conditions and provisions contained on the second page." Notwithstanding this provision of the policy, it is claimed by the appellant that the appellee should have paid or tendered to her the unearned premium, and that having failed to do so, it is precluded from setting up as a defense to the policy the suicide of the insured.

The beneficiary in the policy, the present appellant, paid $33.24 on September 18, 1898, for the quarter from that date to December 18, 1898. The death of the insured occurred on October 4, 1898, sixteen days after the payment of the $33.24 on September 18, 1898, and about two and one-half months before December 18, 1898. The amount of the premium, so paid for the time from October 4, 1898, to December 18, 1898, was about $28.00. It is claimed by the appellant that, because the appellee did not pay back or tender to the appellant this sum of $28.00 alleged to be unearned premium, it thereby waived its right to consider the policy void. It seems to be the contention of the appellant that, by virtue of the provision already set forth, the policy was only voidable and not void, and that to render it void, appellee was bound to exercise its option and declare it void, and then pay

back or tender what is called the unearned premium, amounting to $28.00.

The only question in the case is, whether the failure of appellee to return to appellant such portion of the premium last paid was a waiver of its defense, as hereinbefore set forth. No obligation to refund any portion of the premium is imposed by the language of the contract itself. On the contrary, the provision of the contract is that all payments thereon shall be forfeited to the company, if the policy shall cease or become void within three years from its date. The policy did become void within three years from its date by the suicide of the assured. Therefore, the payments made upon the policy, including the whole of the payment made upon September 18, 1898, were forfeited. We see no reason why the contract, embodied in this provision of the policy, is not valid and binding upon the parties thereto. The assured and the company had a right to agree that, in case the policy should become void within three years, all the payments thereon should be forfeited to the company. The sums, agreed to be paid by the assured at certain specified times, constituted the consideration for the agreement of the insurance company to pay to the beneficiary $2000.00 in case of the assured's death, unless his death was the result of his own act. The payments were made to keep the insurance in force, and had the effect of continuing the policy in force, each for a period of three months. There is no provision in the policy for an apportionment of any of the payments in case of death. The whole of the premium was the consideration paid for the risk which the company assumed. That risk was that the insured might die within the period covered, and thus render the company liable for the face of the policy.

Counsel treats the case as though it involved a forfeiture and rescission of the contract. Appellee has not sought, and does not seek, to rescind or cancel the con-

tract.   It relies upon the provisions of the policy, and these provisions were in full force up to the time of the death of the insured.   Appellee never assumed the risk of the death of the insured by his own hand, because this was expressly excepted by the terms of the contract. The policy was valid and in force up to the time of the death of the assured on October 4, 1898.

Counsel refers to cases where policies have been rescinded for fraud or false representations in procuring them, but such cases have no application here.  Of course, where the insurance company seeks to rescind and declare the contract void *ab initio,* it must, as in all cases of rescission, place the parties *in statu quo,* because in such cases it would be inconsistent to claim that the policy was never in force, and at the same time retain the premiums paid as the consideration for a risk, which had never been assumed.

In some of the cases referred to by counsel there is a provision for a return of part of the premium as a condition precedent.   Such are *Peoria Marine and Fire Ins. Co.* v. *Botto,* 47 Ill. 516, and *Ætna Ins. Co.* v. *Maguire,* 51 id. 342. Here, however, there was no agreement on the part of the company, in case of an election to cancel the policy, to refund the premium for the unexpired term, but by the express contract between the parties the premiums paid were forfeited.   The policy here was not terminated by an act of the insurance company for the purpose of avoiding further risk, but by the act of the insured himself in violation of the conditions of the policy.   It is true that one, who desires to rescind a contract for fraud, must act promptly and tender back what he has received under the contract, and if he remains silent after discovering the fraud, he waives his right to a rescission.  Here, however, the appellee performed its part of the contract, and the policy issued by it continued in full force until it was rendered void by the conduct of the deceased.   At the time of his death, the rights of the parties were fixed,

and nothing more was to be done by appellee except to refuse to pay. In this case, the company accepted no premiums after the death of the insured by suicide. There are cases where the objection urged as a defense, as that the policy itself was obtained by fraudulent representation, goes to the foundation of the policy, that is, makes it void from the beginning. Where the policy was never a valid one, but was void from the beginning, the company, in order to defend against its enforcement, must return the premiums and declare the policy void. But here, it cannot be claimed that the policy was void from the beginning; it took effect and continued in force until its conditions were violated.

The case of *Mutual Life Ins. Co. of New York* v. *Kelly*, 114 Fed. Rep. 268, which was a suit upon two policies, presented almost the precise question, which is involved in the case at bar. In *Kelly's case* the policy was issued, and the company's obligation of payment assumed, on certain specified conditions; among them that Kelly should not die by his own act, whether sane or insane, during the period of two years after the date of the policy; and the court there says: "The contracts of insurance, when fairly and reasonably construed, show that death of the insured by suicide, sane or insane, was a risk not undertaken by the insurer at all. There is no merit in the contention that a return of the premiums paid by Kelly was a prerequisite to a defense by the insurance company. The company earned the premiums paid by Kelly for the risk which it agreed to assume, and which it did assume and carry until Kelly's death. Cases where fraud may have been so practiced in the negotiations, as to render the contract voidable at the instance of the company, or cases where no risk at all ever attached, are totally inapplicable to the facts disclosed in this case, and afford no warrant for plaintiff's contention." (See also *United States Life Ins. Co.* v. *Smith*, 92 Fed. Rep. 503; *Davison* v. *Insurance Co.* 189 Pa. St. 132; *Phœnix Ins. Co.* v. *Stevenson*, 78

Ky. 150; *Colby* v. *Cedar Rapids Ins. Co.* 66 Iowa, 577; *Farmers' Mutual Ins. Co. of Nebraska* v. *Home Fire Ins. Co. of Omaha,* 54 Neb. 740).

Counsel for appellant seems to claim that the provision in the policy for a forfeiture of the premium, if the policy becomes void, does not apply to an unearned premium. There is certainly nothing in the terms of the provision which excludes the unearned portion of the premium. All of the premium is forfeited, both earned and unearned. The cases, referred to upon this branch of the case by counsel, are cases relating to the questions of liquidated damages and penalties. Here, the premiums were not retained as damages, or as a penalty, but were paid as the consideration for the issuing of the policy and assuming the risk upon the life of the deceased. The insured, himself, rendered the policy nugatory by the violation of one of its conditions, but, until such violation, it was in force, and the deceased was insured under it. The company having rendered a full equivalent for the money paid, the contract regulates the rights of the parties.

What has already been said disposes of the suggestion made by counsel that, if it was the intention to forfeit unearned premiums, the policy was void for want of consideration. There are cases where suits have been brought upon notes given for premiums, and where such notes were held to be without consideration, but this was so held, because the policy itself was void from the beginning, as for instance, because the insured party had no title or insurable interest in the property. Of course, where the policy is absolutely void from the beginning, the premium notes are without consideration, the policy itself never having been valid. Where the policy is absolutely void from the beginning, the company cannot claim the right to forfeit the premiums. In such case, no premiums were ever earned, because at no time had the company assumed any risk. Such, however, is not

the case here. As the contract does not provide for a return of the premiums, there was no obligation to return them after the death of the insured, and, there being no obligation or duty to return any part of the premium, the failure to do so was not a waiver of any of the rights of appellee.

We are, therefore, of the opinion that the failure of the appellee to re-pay or tender to the beneficiary the unearned premium does not preclude it from setting up the suicide of the insured as a defense to the policy.

Accordingly, the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*